CASE No. 1053.

HYATT v. McBURNEY.

1. At the suit of C., owner of a prior mortgage, the Supreme Court of the United States held such mortgage unsatisfied, and directed a foreclosure and sale against the purchasers of the mortgaged land, who were parties to that cause; but H., a mortgagee of the purchasers, was not a party, and his rights were reserved; H. then brought his action in the state court upon the bonds and mortgage held by him, making parties defend-

ant his mortgagors, and also C., who, after action brought, but before answer, became, at the marshal's sale, the purchaser of the lands in dispute. The State Circuit judge decreed that the prior mortgage was fully paid and satisfied as to the plaintiff here, (to which finding of fact no exception was taken by C.,) but, in deference to the contrary decision in the United States court, binding the other parties to this action, directed an inquiry whether the plaintiff might not, without difficulty, realize on his bonds, so as to save to C. the land in dispute. *Held*, that the court could not require the plaintiff to pursue any other remedy than the foreclosure, to which he was primarily entitled, under his mortgage contract.

2. Equities between co-defendants may sometimes be adjusted and enforced, but not in disregard of the legal rights of the plaintiff.

Before PRESSLEY, J., Charleston, March, 1880.

This action was commenced October 15th, 1879, by Mary A. Hyatt and Joaquin Delmonte as executors of Edmund Hyatt, deceased, and Mary A. Hyatt, Mary E. Hyatt and Julia Delmonte, devisees and heirs-at-law of said Edmund Hyatt, against William McBurney, William Hasseltine, Alfred L. Gillespie and Thomas R. McGahan, members of the late firm of Hyatt, McBurney & Co., and Caroline Carson.

In 1856 William A. Carson died, leaving of force a last will and testament, whereby he directed his executors to sell the residue of his estate, and to hold the proceeds in trust for his wife and children, according to the shares as therein specified. By virtue of this power Alexander Robertson and John F. Blacklock only qualified executors, sold a plantation called Dean Hall, in Charleston district, to Elias N. Ball, on March 3d, 1857, for $50,-000, of which $35,000 was on credit, secured by bonds and a mortgage to the executors of the premises. In June, 1857, the debts of the estate being paid, the executors transferred these bonds and the mortgage to themselves as trustees of Mrs. Carson and her two children, under the will.

In 1861, Mrs. Carson and her eldest son, (who attained his majority in 1863,) and Blacklock, the trustee, left Charleston, and were beyond the limits of the Confederate States until after the war. The younger son of Mrs. Carson did not attain his majority until after the war.

On May 7th, 1863, Elias N. Ball, for $100,000, conveyed the

Dean Hall plantation to Edmund Hyatt, William McBurney, William Hasseltine, Alfred L. Gillespie and Thomas R. McGahan, in proportion to their interests in the capital and profits of the copartnership of Hyatt, McBurney & Co. On May 8th, 1863, Edmund Hyatt released his interest and title to Dean Hall to the partners, and on the same day sold his interest in the firm to the other partners, receiving in payment their bond for $40,000, secured by a mortgage of Dean Hall. About the same time Ball paid to Robertson, trustee, the balance due on his bonds, and the mortgage of Ball was afterwards marked satisfied by Robertson. All of these payments in 1863 were in Confederate treasury notes.

Mrs. Caroline Carson, after the war, being then a citizen of New York, and having purchased her sons' interest in the Ball bonds and mortgage, brought her action against McBurney, and afterwards against the other partners and Ball, for a foreclosure of the Ball mortgage, and to have its satisfaction canceled. See *Robertson* v. *Carson*, 19 *Wall.* 94, and *McBurney* v. *Carson*, 9 *Otto* 569. Hyatt (a citizen of New York) was not made a party to this action, and in holding the mortgage unpaid, and its satisfaction fraudulent, the court say that its decree would not affect Hyatt's right. Decree of foreclosure was rendered.

In 1876 Edmund Hyatt died, and this action was commenced by his executors, heirs and devisees. After complaint filed, but before answer put in, Dean Hall was sold by the marshal under the order of the United States Circuit Court, and purchased by Mrs. Carson, for $5000.

By order of Judge Aldrich, it was referred to Master Clancy to take testimony, and upon his report Judge Pressley rendered the following decree :

In this case plaintiffs seek to foreclose their mortgage on Dean Hall plantation, which secures a debt due them by McBurney & Co. Their co-defendant, Mrs. Carson, held an older mortgage on said plantation, which one of the executors to whom the mortgage was given, satisfied during the late war. That satisfaction was set aside as fraudulent and void by the Supreme Court of the United States, in a case to which McBurney & Co. were parties, but plaintiffs here were not parties to

that case. I find here not a shadow of fraud, either in the circumstances attending the said satisfaction, or in the nature of the payment, and the very high character of all parties to that transaction, would rebut even strong proof of fraud, if such had been produced in the case. In the absence of all proof in that respect, I follow the decisions of the Supreme Court of this state, and hold that plaintiffs have a valid mortgage on said plantation, discharged of the said older mortgage.

But the obligors of the bond which plaintiffs' mortgage secures, being parties to the decision of the United States court, are bound by it. It is a final adjudication of their rights, and I am bound to respect it. In doing so I must give it full effect if that can be done without impairing the lien of the plaintiffs. They are not entitled to enforce payment of their bond out of property which the said decision gives to Mrs. Carson, if they can, without difficult or expensive litigation, enforce payment by the obligors, who are bound by the said decision. Were I to decree that, my profession of respect for that decision would be only a flimsy pretense.

It is, therefore, ordered that this case be re-committed to Master Clancy, to take testimony and report whether the plaintiffs can, without difficult or expensive litigation, procure payment from the obligors of said bond otherwise than by the foreclosure of their said mortgage.

The code, as construed by the Supreme Court of this state, requires that every case, without regard to the pleadings, be decided according to right. To that end leave must be granted to amend the pleadings, even after the hearing. If Mrs. Carson be advised that amendment of her answer be necessary, leave to amend it according to the claim set up by her at the hearing, is hereby granted.

From this decree the plaintiffs appealed to this court upon the grounds—

1. That his Honor was in error in holding that the plaintiffs are not entitled to foreclose their mortgage until it is ascertained that they cannot in some other way make their money, for such ruling in effect alters and changes the contract between the par-

ties and deprives the plaintiffs of the benefit and advantage of their security.

2. That such a defence, if it could have been entertained at all, came too late upon the hearing of the cause upon the merits, and that his Honor erred in allowing Mrs. Carson leave to amend her answer " *according to the claim set up by her at the hearing.*"

Upon the points decided by this court, an abstract of the arguments is given.

*Messrs. McCrady & Son,* for appellants.

1. The United States court did not give this property to Mrs. Carson ; it only held her mortgage to be a subsisting lien. She is now a purchaser and has only such title as the United States courts could give. That decree was understood to be at variance with the decisions of this state, and she was warned what Hyatt could do, and our mortgage being held valid, we clearly have right to foreclose. The Circuit decree permits Mrs. Carson to amend her answer by asserting a claim to a decree against McBurney for that debt to Hyatt, which her land is compelled to pay. But Mrs. Carson has no warranty from McBurney and others, she takes no title through them, and can have no protection in a court of equity as against them. 3 *How.* 333 ; 11 *Wall.* 232. Her authority (*Dixon on Subrog.* 28) does not sustain her position, Mrs. Carson is not a subsequent creditor, and see *Id.* 29, and *Spears Eq.* 37. But the defendants here have not answered and Mrs. Carson, a co-defendant, can have no relief not demanded in the pleadings. 1 *Hill Ch.* 147 ; 2 *Sch. & Lef.* 690. Nor can a decree be made between co-defendants here, because no such decision is required to give the plaintiff his rights. 3 *Hare* 637 ; 5 *Russ.* 45 ; 27 *Beav.* 515 ; 11 *Cl. & Fin.* 661.

2. But the defence came too late. 9 *S. C.* 334 ; 5 *S. C.* 285. It would make a new case.

*Mr. A. G. Magrath,* contra.

Hyatt standing simply as a junior mortgagee was no proper party to the case of Carson *v.* McBurney. The nature of the

title of McBurney and his partners has been adjudicated. That is the title which was mortgaged to Hyatt. His rights were reserved, but they were only the rights of a junior mortgagee—to redeem, &c. It is really the old case in Hyatt's name. The property was purchased for the partnership, and as such is bound by the former decree, all the partners in the state being parties. The comity due to the United States court should prevent a different judgment. But Hyatt should be forced to proceed on his bonds, as Mrs. Carson would be entitled to recover from McB. what Hyatt obtained from her land. *Dixon on Subrog.* 22, 28 ; 1 *Strob. Eq.* 52 ; 1 *Hill Ch.* 35, 228 ; 12 *Wheat.* 594 ; 93 *U. S.* 96. And such decree may be awarded between co-defendants. 1 *Hill Ch.* 147 ; 2 *Sch. & Lef.* 710.

July 16th, 1881. The opinion of the court was delivered by

SIMPSON, C. J. In December, 1862, Hyatt, McBurney & Co., of the city of Charleston, purchased from Elias N. Ball a citizen of South Carolina, a certain tract of land known as Dean Hall, situate in Charleston county, at the price of $100,000. This tract had been purchased in 1857 by Ball from the executors of W. A. Carson, deceased. Ball had given his bond for the purchase money, with a mortgage of the premises to secure its payment. This bond and mortgage had been satisfied with the executors of Carson by Ball about the time he sold to Hyatt, McBurney & Co.

A short time after this purchase by McBurney & Co., Hyatt concluded to withdraw from the firm, and he conveyed his interest in the Dean Hall property to the surviving members of the firm, to wit, William McBurney, William Hasseltine, Alfred Gillespie and Thomas R. McGahan. Upon the withdrawal of Hyatt, the firm was found indebted to him some $40,000. For this sum McBurney & Co. gave their bonds, with a mortgage of the Dean Hall land to secure their payment.

After the war, Mrs. Caroline Carson, one of the legatees and devisees of her husband, and who had become sole party interested in the estate, being a resident of the State of New York, instituted proceedings in the United States court, denying that the Ball mortgage had been legally satisfied, (it had been paid off

during the war with Confederate money,) and praying that it might be set up against the Dean Hall tract and be foreclosed. Hyatt was not made a party to this proceeding, but the other members of the late firm had been. This case was heard on Circuit and was taken to the Supreme Court. The satisfaction of the mortgage was held fraudulent and a foreclosure ordered. It was expressly stated, however, that as Hyatt had not been made a party, the decree would not affect his rights.

After this foreclusure decree in favor of Mrs. Carson in the United States court, as above stated, and before the sale of the land, Mr. Hyatt instituted this action in the state courts, claiming the foreclosure of his mortgage. To this proceeding Mrs. Carson, being made a party, appeared and set up as a defence the illegality of the satisfaction of the Ball mortgage and also the decree of foreclosure of the United States court as an estoppel to plaintiff's action. In the meantime she had purchased the land under this foreclosure decree.

The case was referred to W. D. Clancy, Esq., one of the masters of the court, to take testimony and report the same. Upon the coming in of this report Judge Pressley found, as matter of fact, that " there was not a shadow of fraud either in the circumstances attending the satisfaction of the Ball mortgage or in the nature of the payment by Hyatt, McBurney & Co. to Ball," and he decreed, as matter of law, that the plaintiff had a valid mortgage on said plantation discharged of the older or Ball mortgage, under which Mrs. Carson claimed.

There has been no appeal from either this finding of fact or law by the Circuit judge. The judge, however, further decreed " that the obligors of the bond which plaintiff's mortgage secures being parties to the decision of the United States court, are bound by it. It is a final adjudication," says Judge Pressley, " of their rights, and I am bound to respect it. In doing so I must give it full effect, if that can be done without injuring the lien of the plaintiffs. They are not entitled to enforce payment of their bond out of property which the said decision gives Mrs. Carson, if they can, without difficulty or expensive litigation, enforce payment by the obligors, who are bound by the said decision. Were I to decree that, my profession of respect would be only a

flimsy pretence. It is therefore ordered that this case be recommitted to Master Clancy to take testimony and report whether plaintiffs can, without difficulty or expensive litigation, procure payment from the obligors of said bond otherwise than by foreclosure of said mortgage. The code, as construed by the Supreme Court of this state, requires that every case, without regard to the pleadings, be decided according to the right. To that end leave must be granted to amend pleadings even after the hearing. If Mrs. Carson be advised that amendment of her answer be necessary leave to amend it according to the claim set up by her at the hearing is hereby granted."

The plaintiffs appealed, and the appeal brings up the correctness of this position of the decree.

The Circuit judge held that the mortgage under which Mrs. Carson claimed had been satisfied ; that the mortgage of the appellant was a valid and subsisting lien on the plantation and expressly discharged from the older mortgage of Ball. Under these circumstances we cannot see how the appellants, if they demand it, can be denied their right to foreclose their mortgage. This was the contract between the parties, and it belongs to a class of contracts which can be specifically enforced through the courts.

The mortgage of the appellants did not give them the right to pursue other property of the mortgagor, but it gave a specific lien on the Dean Hall plantation ; none other. The contract was, that under this mortgage the mortgagee should have the right through the courts to a decree of sale of that plantation on failure of the mortgagors to meet their obligation. The decree denies this right, and requires the appellants to give up the lien which they contracted for, and to pursue property over which they have no lien.

The action of the appellants is primarily an action in the nature of an action *in rem*. If they do not obtain a judgment by which the specific property embraced in the mortgage is set apart for the payment of their debt, they can only have a general one on the bonds of the mortgagor, upon which they would be compelled to issue executions, so as to reach such leviable property of the respondents as they might be able to find. In other

words, the contract made by the parties themselves is ignored
and a new one substituted by the court.

As has already been stated, the Circuit judge found that the
mortgage under which Mrs. Carson claims had been paid off and
extinguished by Ball, the mortgagor, before he conveyed to
Hyatt, McBurney & Co., and that the mortgage of the appel-
lants was the only valid lien upon the land. Mrs. Carson has
not appealed from this portion of the decree. These facts, then,
stand as established before this court, and cannot now be dis-
puted by her. Such being the fact, much of the argument,
pressed with great zeal and force by her counsel, is inapplicable
and cannot be considered, because the questions to which it was
addressed are not before the court.

The only question before the court is, was the Circuit judge
in error when he declined to allow the appellants the benefit of
the remedy which they sought, and which the facts of the case,
as found by the Circuit judge and admitted, so far as this case is
concerned, by all of the parties, including Mrs. Carson, entitled
them to demand? Was the Circuit judge in error in denying
to appellants this remedy and in turning them over to another,
which the appellants did not seek, and are now unwilling to re-
ceive, being different from that for which the parties contracted?

Sometimes there may be equities between defendants which
should be adjusted, and when they properly arise in a case the
court has power, under the code, to enforce them; but in en-
deavoring to have justice done between defendants, the legal
rights of the plaintiffs should not be disregarded and overthrown.

What is the equity of Mrs. Carson in this case, to which the
rights of the appellants have been subordinated? The decree
fails to furnish any tangible equity upon which the court can
found a judgment in her favor. She does not claim that appel-
lants have a lien upon two funds, either of which would satisfy
appellants' debt, and that she has a lien upon one of these, and,
therefore, that appellants should be thrown upon the other. She
does not show that she has paid to appellants a debt to which
the doctrine of subrogation would attach. No principle of re-
cognized equity is invoked. Her only claim is that the United

2 c

States court has previously held that as between herself and the other defendants her mortgage was good. To that decision, however, the appellants were not parties, and the court, in pronouncing judgment, expressly declared that it would not bind the appellants. This decision, therefore, is not *res judicata* as to them, and it has no binding force here.

Now, while we have a profound respect for the United States court, and admire the learning and ability which has always characterized its decisions, and while we would most cordially yield to its authority in a case where all parties interested in the question acted upon were before the court, yet in a case like this, where all the parties in interest were not before the court, and where the rights of the absent parties were expressly reserved, and where the matters in issue have since been adjudicated by our own courts, with all parties interested present, from which adjudication there has been no appeal, we feel constrained to sustain that judgment, although it is different from that of the United States court.

We think that the appellants, by virtue of the Circuit decree, which held that the mortgage of appellants was the only lien upon the land in question, and from which respondents have not appealed, became entitled to have said mortgage foreclosed, according to the usual mode in such cases, and that it was error in the Circuit judge to postpone this established right of appellants to the claim of respondents.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded for such further proceedings as may be necessary to enforce the principles of this opinion.

McIVER and McGOWAN, A. J.'s, concurred.